Elizabeth S. McDougal *v.* People's Savings Bank et al.

MARRIED WOMAN.    *Attempt to avoid sale under trust-deed.    Consideration.    Case in judgment.*

In 1876, M., a married woman, executed a deed of trust upon certain real estate, being her separate property, to secure the payment of a certain sum of money borrowed from a bank and used in paying two debts, one for one hundred and twelve dollars, which she had legal capacity under the Code of 1871 to contract, and the other for one hundred and sixty-four dollars, which she could not contract so as to bind her separate estate generally, but which was a charge upon the particular property conveyed by the deed of trust.    Default having been made in the payment of the debt secured, the trust property, which was of an indivisible character, was sold by the trustee and bought by the bank at the price of two hundred and fifty dollars.    M. made no objection to the sale, but several years thereafter filed her bill in chancery to avoid the same, on the ground that a part of the debt for which it was made, and which was thereby paid, was beyond her capacity to contract.    *Held,* that the contract embraced in the deed of trust being no longer executory, but having been fully executed, the sale, in the circumstances of this case, must be upheld.

APPEAL from the Chancery Court of Lauderdale County.

HON. SYLVANUS EVANS, Chancellor.

On the 22d of July, 1871, L. A. Ragsdale leased to Elizabeth S. McDougal for an indefinite period a certain lot in the town of Meridian, to be held upon payment of an annual rent, or to be forfeited in default of such payment, which should give the lessor the right to re-enter and re-let the premises.    On the 26th of February, 1876, Mrs. McDougal and her husband, W. C. McDougal, obtained from the People's Savings Bank, of Meridian, four hundred and forty-five dollars, for which they gave their joint promissory note, and to secure the payment thereof executed a joint deed of trust in favor of the bank upon the lot leased from Ragsdale. On the 30th of October, 1876, J. P. Walker, the trustee, sold the lot conveyed by this deed of trust, in pursuance of the terms thereof, and the same was purchased by the People's Savings Bank at the price of two hundred and fifty dollars.

On the 20th of February, 1882, Mrs. McDougal filed the bill in this case, alleging that the indebtedness to secure which the deed

of trust referred to was executed was the sole and separate debt of her husband, that the lot embraced in that deed was her separate property, that the sale to the bank was void and conferred no title, and that the deed of trust had legal effect only as an assignment of the rents and profits of the property covered by it. The prayer of the bill is, that an account be taken to ascertain what rents have been received by the bank from such property, and what balance, if any, is still due the bank after properly applying the receipts to the payment of the debt secured by the deed of trust, and that the " complainant be declared entitled to redeem said property upon payment of what, if anything, shall be found remaining due to said bank, and that said bank be ordered, upon such payment being made, to deliver possession of the premises aforesaid to the complainant."

The People's Savings Bank answered the bill, denying that the debt secured by the deed of trust executed by the complainant and her husband on the 26th of February, 1876, was the debt of the husband, and stating that it was her debt for money lent her by the respondent, and which was used (1) to pay one hundred and twelve dollars and interest thereon due by the complainant for lumber furnished her by B. Y. Ramsey to construct a building upon the lot in controversy, (2) one hundred and sixty-four dollars with interest due by complainant to L. A. Ragsdale for rent of said lot, and (3) several small amounts to Ragsdale and others. The facts established by the evidence as to the character of these several items of indebtedness, which the bank claims were paid off with the money borrowed from it, are sufficiently stated in the opinion of the court.

Upon final hearing the court below dismissed the complainant's bill and she appealed.

*Whitfield, Young & Stanley*, for the appellant.

We contend that it is fatal to the defendant's case if it fail to show that all of the considerations for which the note was given were the lawful obligations of Mrs. McDougal; and that it has failed in this is not disputed.

If a part of the consideration of a contract be legal and a part

be illegal the contract is void. Par. Notes and Bills 212; 1 Par. Cont. 445; *Cotton* v. *McKenzie*, 57 Miss. 418; *Bank* v. *Stegall*, 41 Miss. 846.

And a deed of trust to secure such a contract, being a mere incident, is equally void. *Coulter* v. *Robinson*, 14 S. & M. 26; *Adams* v. *Rowan*, 8 S. & M. 624; *Bush* v. *Cooper*, 26 Miss. 611; *Cotton* v. *McKenzie*, 57 Miss. 418; *Carradine* v. *Wilson*, 61 Miss. 573; Jones on Mort. 620.

The illegality that avoids a contract may exist, not only where the contract is positively forbidden by law, but where " it is against the general principles and doctrines of the common law" (Story Prom. Notes, § 189) or is against " public policy; for this the law must always protect." 1 Par. Notes and Bills 214.

These definitions of illegality clearly embrace the unauthorized contracts of a married woman under our Code of 1871. It was then against the general principles and doctrines of the common law, as well as the public policy of this State, to *permit a married* woman's contract to stand unless expressly authorized by the statute. Such contracts were not void or voidable for want of consideration, but they were absolutely void, notwithstanding the most meritorious consideration, because of the utter incapacity of the married woman to concur; not a physical incapacity, but one imposed by the policy of the law for the supposed welfare of society. This is true whether we consider the incapacity as created by the common law or by our statute.

Speaking of our statute (which was originally entitled " An act for the further protection and preservation of the rights and property of married women " and was intended to " secure more than a separate ownership," *Frost* v. *Boyle*, 7 S. & M. 74), Justice Clayton said, in *Berry* v. *Bland*, 7 S. & M. 46, " The intention of the legislature is too plain to be mistaken. The statute directs a particular mode in which a *feme covert* may alienate her separate property and provides that it shall not be done otherwise. To hold that it cannot be alienated otherwise directly, yet that it may be charged with debts and sold, would be to let in all the mischiefs against which the statutes seem directed. The object in view seems

to have been to guard her against her own acts into which her affection for her husband or his influence over her might lead her."

This court has on several occasions declared that when the consideration of a note secured by a married woman's deed of trust was partly her debt and partly the debt of her husband, there could be no lawful sale until the debts are separated, and that binding the corpus distinguished from that binding the income only. *Dibbrell* v. *Carlyle*, 51 Miss. 788 ; *Dibbrell* v. *Carlyle*, 48 Miss. 708 ; *Caldwell* v. *Hart*, 57 Miss. 124.

*J. W. Fewell*, for the appellee.

As to two hundred and seventy-six dollars and thirty-three cents of the debt secured by the deed of trust, it was a debt which from its very inception and origin constituted a valid lien and burden on this very property, a debt upon payment of which the whole interest of complainant in this property depended.

Ragsdale could have enforced a forfeiture of the property for non-payment of the ground-rent part of it, and if I am right in the position that the Ramsey one hundred and twelve dollar debt was a debt competent to complainant, the corpus of the property could have been sold under this debt.

Now how have these debts lost these qualities in or by reason of their new form ? How has the complainant been injured by the extension of this debt or by its new dress? She has not anywhere discharged her property of its burden except by re-clothing it with new forms of the same substance.

So, I insist, the debt due the bank was a debt for which complainant could bind the whole body of this property. It is immaterial that part of the debt to the bank was a debt for which she could not bind the corpus of her estate, or rather that there was added to this binding debt an additional debt for which she could not bind this property. This property and the body of it was bound by the two hundred and seventy-six dollar debt and interest. If she had filed a bill to redeem this property—to cancel that part of the debt which she had not power to contract—a court of equity would have decreed that she must pay the two hundred and seventy-six dollars and interest, and that the property be sold to

pay that amount. Suppose that had been done, and the property
had been sold under that decree and had brought two hundred and
fifty dollars, will anybody contend that the full and entire interest
of Mrs. McDougal would not have passed under such sale? And
now that it appears that the property was sold in strict accordance
with the trust-deed and for a fair price, and that it brought less
than the valid, binding, and competent debt, what reason or sense
is there in contending that the entire interest did not pass? This
court will regard the substance and not the form of the matter.
As to that part of the debt which she had not power to contract,
let her defenses be set up when that part shall be asserted against
her. See *Nelson* v. *Barber*, 52 Miss 410; *Netterville* v. *Barber*,
52 Miss. 168. .

Cooper, J., delivered the opinion of the court.

There is a conflict of evidence upon the point whether the debt
due on the compromise with Ramsey was the debt of the appellant
or that of her husband. The Chancellor has evidently found it to
have been appellant's debt, and we approve this decision. The
debt or charge which existed in favor of Ragsdale for the unpaid
rent was neither the debt of the husband nor of the appellant. The
husband had no sort of connection with the contract from which it
arose, and the complainant, being a married woman, did not have
capacity to contract the obligation so as to charge her separate
estate with its payment. It was a mere charge upon the demised
premises, and by the lease Ragsdale had carved out for himself a
remedy to enforce its payment. The debts of the husband to Rags-
dale and others, which were discharged out of the money advanced
by the bank, could not by the complainant be charged upon the
corpus of her estate, and nothing is added to the strength of
defendant's right by invoking the rights of these creditors, because
they had none.

Looking behind the note, it appears that the complainant
executed a deed of trust to secure the payment of one hundred and
twelve dollars due by herself arising from a contract which she
had capacity to make and for which her separate estate could be

charged ; one hundred and sixty-four dollars and thirty-three cents, which was a charge upon the lot in controversy, to be enforced in the specific manner provided by the lease, and which could not by contract with the complainant be made a general charge upon her separate estate ; about one hundred and seventeen dollars due by the husband alone, for which the complainant might charge the income of her estate by mortgage or other incumbrance, but for which she could not in any manner charge the corpus of her estate. In default of the payment of any or all of these sums the trustee was authorized and directed to make sale of the land and out of the proceeds of such sale to discharge all of said sums. There was a default in the payment of all of these sums, and the trustee, proceeding under the power conferred, sold the property to the beneficiary for a sum greater than the debt due by the complainant, but less than the amount of that debt *and* the charge arising under the lease. The debt due by the husband may be left out of consideration, since no part of it has been paid by the sale.

Though it appears that the property is now worth many times the price at which it was sold, it is clearly shown that by reason of the low prices prevailing at that time and the dilapidated condition of the house it brought about its fair market value ; nor do we think any unfairness, fraud, or inequitable advantage appears in the fact, conduct, or terms of sale.

We recognize to its full extent the wholesome rule that courts of equity will rigidly scrutinize sales made under powers contained in mortgages and deeds in trust, especially where the beneficiary becomes the purchaser, and will not permit them to stand if there is anything casting well-founded suspicion upon their fairness, but will protect all parties by directing a re-sale under the eye of the court. This rule we neither disregard nor limit, but hold that under the facts of this case it has no application.

The complainant, however, insists that, notwithstanding it may appear that the sale was fairly made by the trustee, yet because a part of the debt which was paid by the sale was beyond her capacity to contract, she being a married woman, the sale itself was void, or, if not void, it was at least voidable at her election.

By our statutes which were in force at the time of the transactions under consideration the contracts into which a married woman could enter so as to make liable thereto her statutory estate were specifically enumerated. Contracting within the limits thus defined, her separate estate could be charged therewith either by the action of courts of law or courts of equity; beyond the limits of the statute she had, in reference to her separate statutory estate, no capacity whatever, whether she did or did not intend by her contract to charge her estate; there was a defined and limited power to contract. On the other hand, her power of disposition by deed was almost unlimited in its character, though the form and method was minutely defined and an attempted disposition in any other manner was wholly void. She could make no conveyance or incumbrance of her lands unless the husband joined in the execution of the same; but this being done, and her acknowledgment being taken in the form prescribed, her power of disposition or incumbrance was limited only by the provision that no "conveyance or incumbrance for the separate debts of the husband shall be binding on the wife beyond the amount of her income."

And this power of disposition could be executed by an attorney by her properly appointed. Code of 1871, §§ 1778 and 1897.

In the multitude of cases which arose under these statutes there were great numbers in which the contracts of married women were involved and numbers in which incumbrances or conveyances for the separate debt of the husband were sought to be enforced or defeated, but no case is known to us in which the question now before us was presented.

In *Chandler* v. *Morgan*, 60 Miss. 471, it was held that a married woman could not make a valid contract to indemnify one who at her instance became surety for the appearance of another charged with crime, and a mortgage executed by her to secure such indemnity was decreed to be cancelled. But in that case the objection was made before the execution of the power of sale conferred by the deed, and the mortgage stood at the time of the institution of the proceeding to cancel as a mere security for the performance of the invalid contract, and since the contract was itself unenforceable, so

also was the mortgage given to secure it.   But a widely different question is now presented, for it is not whether an executory contract, the validity of which is determinable by the existence or non-existence of a consideration, shall be annulled, but it is whether an executed contract and conveyance, concluded and made years ago in the manner directed and provided by the complainant, can now be reopened and avoided because she now desires to avail herself of the defect of the consideration upon which she then acted. We are of opinion that this ought not to be permitted, and that no sound construction of the statutes on the subject requires that it should be.   It is undoubtedly true that, whether complainant's estate was or was not chargeable with the debt as a contract obligation, she had under the statute full power to convey it absolutely and irrevocably in consideration of the demand, whether it was real or invalid, for she might have made a gift of it to whomsoever she pleased, provided her husband joined in the execution of a conveyance acknowledged by her in the manner prescribed by the statute.   The fact that she could not have entered into a contract enforceable as such for the conveyance of the estate is not material. A person *sui juris* cannot make a voluntary executory contract of which any court will compel a specific performance, but when such contract becomes fully executed no court will overturn it because it was made without consideration.   We now recall no executed contract of a married woman, save only that of a conveyance of her estate in payment of the separate debts of the husband, which she could avoid on the ground that she was covert when it was made.   The complainant had authority, as we have said, to convey her estate upon such consideration as was satisfactory to her provided it was not the separate debt of the husband.   She had authority to appoint an agent to make such conveyance, and this she did.

A part of the debt intended to be secured and for the payment of which the property conveyed was devoted to sale was her debt, binding upon her estate and enforceable as a contract, and this debt remained unpaid ; the property was of an indivisible character ; the contingency upon which the trustee was authorized to act arose,

and without objection or protest from her he dealt with the estate as directed by the deed. Under such circumstances the transaction should be held to be closed and unassailable. To permit attacks of this character would unsettle the titles of many estates, and would be especially dangerous in view of the fact that under the Code of 1871 no statute of limitations ran against a married woman.

*The decree is affirmed.*