## JOSEPHINE SEVIER *v.* R. A. MINNIS.

1. TAX-TITLE. *Who may acquire. Mortgagee in possession.*

    Where, prior to the code of 1880, a married woman, with her husband, executed a mortgage of her land to secure borrowed money, a purchaser at foreclosure sale thereof became entitled only to the income during her life, and, while in possession, is under a duty to pay the taxes, and neither he nor one acting by his procurement can acquire a tax-title to the defeat of the mortgagor.

2. MARRIED WOMAN. *Coverture. Mortgage. Equity.*

    Although a mortgage of her land by a married woman and her husband, prior to code of 1880, was for borrowed money, to be used, and which was used, by her in purchase of other land, it cannot be enforced, except as to the income during her life, and this, regardless of what the parties to it intended.

FROM the chancery court of Monroe county.

HON. BAXTER MCFARLAND, Chancellor.

On December 3, 1872, appellant, Josephine Sevier, was the owner of the land in controversy, and, jointly with her husband, executed a trust-deed thereof in the usual form to secure their joint note for $500 to W. S. Vestal for money borrowed at the time. Default having been made in payment of the note, the trustee, in 1879, sold the land, and Vestal

became the purchaser, and received a conveyance from the trustee. Under the law at that time, and prior to the code of 1880, regulating such incumbrances by married women, the trust-deed bound only the income during her life, but, regardless of this fact, and presumably under the supposition of all parties that the trust-deed and sale thereunder passed the fee, Vestal at once entered into possession of the land, and thereafter dealt with it as his own. Soon after this, because of blindness and feeble health, he became disqualified to attend to his business, and became an inmate of the home of Dr. R. A. Minnis and his wife, E. A. Minnis, who cared for him, and attended to all of his wants. Dr. Minnis also acted as his agent and adviser in the management of all his business affairs, and, among other things, attended to the purchase of the land at the foreclosure sale above mentioned, and paid his taxes and collected his rents. In 1877 Vestal executed a will, by which he named Mrs. E. A. Minnis as sole devisee of all his property, and the contents of this will were known to her and her husband.

On the first Monday of March, 1884, the land in controversy was sold for the taxes of 1883, and at the sale Dr. Minnis, as agent for his wife, bid in the same, and a deed was executed by the tax-collector to her. Since that time he has regularly paid the taxes. Mrs. Minnis died in 1889, leaving as her heirs, her husband and her two sons, Robert G. and Paul Minnis. W. S. Vestal had previously died, in 1887, leaving a will, which, as above stated, devised all his estate to Mrs. E. A. Minnis. The bill in this cause was filed, in 1893, by Josephine Sevier against the said heirs of Mrs. Minnis, and certain incumbrancers under them. It sets up the fact that the deed of trust executed by her and her husband to Vestal, in 1872, because of her then coverture, was binding only upon the income of the land during her life, and alleges that such income has been sufficient to pay a great part, if not all, of the mortgage debt, and it prays an accounting as to the indebtedness and the rents. The bill also seeks

to vacate the said tax-title, acquired by Mrs. Minnis in 1884, on the ground that, as her husband was, under the circumstances, bound to pay the taxes, he could not acquire for his wife the tax-title. The bill also charges that the failure to pay the taxes was in pursuance of a scheme to vest the fee-simple title in Mrs. Minnis, so as to defeat the right of complainant.

The facts averred in the bill, so far as they affect the title and right asserted by complainant, were not denied by the answer of defendants, the controversy on the trial being mainly as to the validity of the tax-title acquired by Mrs. Minnis. There was a decree for the defendants dismissing the bill, and complainant appeals.

*E. H. Bristow*, for appellant.

Prior to 1880, a mortgage by a married woman of her separate estate, to secure borrowed money, bound only the income. *Reed* v. *Coleman*, 51 Miss., 835; *Harmon* v. *Magee*, 57 *Ib.*, 410. Vestal, being in possession and enjoyment of the income, was bound to pay the taxes, and neither he nor Mrs. Minnis could acquire a tax-title as against complainant. 1 Blackwell on Tax-titles, 566; *McGhee* v. *Holmes*, 63 Miss., 50.

Minnis, being the agent of Vestal, was disqualified to buy, and hence his wife could not. . *Robinson* v. *Lewis*, 68 Miss., 69.

It is clear, from the testimony, that the forfeiture for taxes, and purchase by Minnis in his wife's name, was the result of an arrangement made with Vestal in order to get the title in Mrs. Minnis.

*Clifton & Eckford*, for appellee.

While there might have been an inhibition on Mrs. Minnis to obtain a tax-title against Vestal, while her husband was his agent, neither Minnis nor his wife was under any obligation to complainant, or under disability to acquire a tax-title against her. 1 Blackwell on Tax-titles, 593; Black on Tax-titles, 139; *Martin* v. *Swofford*, 59 Miss., 328; *Robinson* v. *Lewis*, 68 *Ib.*, 69.

An agent is disqualified to acquire, because his principal is. But there existed no agency between Minnis and Vestal at the time the land was sold. The evidence shows that Vestal had abandoned the property, and did not intend to pay the taxes. In any view the question of agency is one of fact, and the decision of the court below on it will not be disturbed. Blackwell on Tax-titles, 530, 598; 69 Pa. St., 436.

The charge of fraud and collusion, for the purpose of getting the title in Mrs. Minnis to defeat the complainant, is not supported by the evidence. On the other hand, it is shown that Vestal, and all the parties concerned, thought that his title was absolute. Complainant got Vestal's money and invested it for her own benefit, and gave him a warranty title. She added materially to her own estate by the use of the purchase-money. In a court of conscience she should not be permitted to keep the money thus borrowed, and the land which she bought with it, and, at the same time, recover the land in controversy. She cannot demand that the law be so applied as to deny the mortgagor the right to turn loose and abandon the land if he so desires. Vestal was under no obligation to keep up the *status quo* and continue to pay the taxes. To do so would require him to incumber what little other property he had, and all this merely in order to carry out a legislative policy in reference to married women, which has sown dishonesty, and for years reaped a harvest of fraudulent transactions, as shameful as the one sought to be perpetrated here.

Campbell, C. J., delivered the opinion of the court.

Mr. Vestal, by his purchase under the deed of trust, became entitled to the income arising from the estate, and it was his duty, while in the enjoyment of the estate, to pay the taxes, and he could not free himself from this obligation by relinquishing to another the land or permitting it to be sold for taxes, and bought by another. It is manifest that, by agreement with Vestal, Robert Minnis purchased the land

at the sale for non-payment of taxes, and put the title in his mother, who had expectation of acquiring the land by devise under the will already made, and which, though subject to be revoked, was not likely to be. All the family felt sure that she would get it, and it seems strange that the taxes were not paid, and the expense of sale saved, and a conveyance obtained from Vestal, if he was determined to abandon the land. He consented to the sale and purchase for Mrs. Minnis, and, in December, 1885, when applied to by Dr. Minnis, declined to redeem, and consented to the holding and improving the land by Mrs. Minnis. She held the land just as Vestal did, and could not set up her tax-title, acquired under the circumstances, against the complainant.

We fully concur with counsel for the appellee in their eloquent strictures on the "married woman's law," and its being the prolific source of unnumbered rascalities, during the period of evolution, by successive stages from the barbarism of her former condition as a *feme covert*, to her complete emancipation by the code of 1880, but do not feel authorized, because of that, to overturn correct principles of law, in order to prevent what may be a moral wrong. We would gladly seize upon any thing affording a just ground for enforcing the contract originally made between Sevier and Vestal, according to their understanding of it, if we felt justified. *McDougal* v. *Bank*, 62 Miss., 663; *Cross* v. *Hedrick*, 66 Miss., 61.

*Reversed, and remanded for further proceedings in the chancery court, in accordance with this opinion.*